IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, | |
| Plaintiffs, | No. 15-cv-2690 |
| v. | Jeffrey T. Gilbert<br>Magistrate Judge |
| BOLINGBROOK REDI-MIX CO., a dissolved Illinois corporation, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Trustees of the Suburban Teamsters of Northern Illinois Pension Fund (the "Fund") have sued several corporations – Defendants Bolingbrook Redi-Mix Co. ("BRM"), Route 66 Construction Company ("Route 66"), SJR Leasing & Management Company ("SJR"), Four Beat Farm, LLC ("Four Beat"), and R.A. Bright Construction, Inc. ("R.A. Bright") – alleging that all Defendants are liable to pay the costs associated with BRM's withdrawal from a pension plan. [ECF No. 1.] The Fund has moved to quash discovery requests served by the Defendants [ECF No. 20], and Defendants have moved to compel responses to those same requests [ECF No. 22]. After both motions were filed, the parties consented, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 25.] For the reasons stated below, both motions are granted in part and denied in part.

## I. BACKGROUND

Defendants are five companies owned by different members of the Bright family. Robert Bright owned 100% of BRM and 100% of R.A. Bright. His wife, Nicola, owned 100% of Route 66. Robert and Nicola each owned 50% of Four Beat. And Nicola owned 67% of SJR, with the other 33% owned by Robert and Nicola's three children. It seems that these five companies were linked by more than ownership. The Fund claims, and Defendants have not disputed, that BRM transported concrete to Route 66's jobsites and that SJR served as a management company for Route 66's equipment. The Fund also notes that Nicola personally signed an ERISA-related installment note for BRM [ECF No. 20-1. at 59] and Robert personally signed ERISA-related notes for Route 66 [ECF No. 20-2, at 4]. The Fund has described even more links among Defendants. *See* ECF No. 20, at 5. But the extensiveness of their relationship does not determine the outcome of the pending motions; it is only background. So the information already provided is sufficient for now.

At some time in the past – the record before the Court does not reveal exactly when – BRM became bound by a collective bargaining agreement, or a "CBA," with Teamsters Local 179. The CBA required, presumably among other things, that BRM contribute to the Fund, which is a multiemployer pension plan. According to the complaint, BRM's contribution base units – which means the number of "unit[s] with respect to which" BRM had "an obligation to contribute under [its] multiemployer plan" – declined at least 70% in 2010. 29 U.S.C. § 1301 (a)(11); [ECF No. 1, ¶ 14]. The Fund alleges that such a steep decline affected a partial withdrawal from the pension plan under the statute that governed BRM's relationship with the Fund, the Employee Retirement Income Security Act of 1974, which is known as "ERISA." [ECF No. 1, ¶ 14.] The Fund also claims that, in 2012, BRM completely withdrew from the plan

because it permanently ceased to have any obligation to contribute under the plan. *Id.* ¶ 16. In 2015, the Fund filed suit against Defendants, seeking to hold all of them liable for the costs associated with BRM's withdrawal.

On November 23, 2015, Defendants served their First Set of Interrogatories [ECF No. 22-1, at 2-12] and their First Request for Production of Documents [ECF No. 22-1, at 14-23]. These discovery requests were varied and broad. For instance, the interrogatories asked for information about whether BRM withdrew within the meaning of ERISA, whether the Fund's withdrawal liability calculations were correct, whether Defendants received notice of the withdrawal liability, and whether a non-defendant named American Redi-Mix was under common control with Defendants. Crucially, though, interrogatories 4, 5, and 4 [sic][1] sought information about whether Defendants were employers within the meaning of ERISA, whether Defendants were under common control, and whether Defendants were alter egos to BRM. Defendants' document requests were similarly expansive in their sweep. And requests 3, 4, and 5 sought documents related to the same issues to which interrogatories 4, 5, and 4 [sic] pertain.

The Fund did not respond to either the interrogatories or the document requests within the 30-day time-period mandated by the Federal Rules of Civil Procedure. So Defendants contacted the Fund on January 11, 2016, about two-and-a-half weeks after responses were due. [ECF No. 22-1, at 25.] Four days later, which was a Friday, one of the Fund's lawyers emailed back, saying that the Fund should be able to provide answers to the outstanding discovery "next week." *Id.* at 27. Defendants seemed amenable to this proposal. [ECF No. 22-2, at 2.] But the Fund did not follow through. Instead, on January 28, the Fund refused to provide the "promised" discovery because it had "come across authority demonstrating that, in fact, [its] responses

---

[1] Defendants erroneously included two interrogatories numbered 4. One appears in the proper place, between 3 and 6. The other appears between 5 and 6.

3

[were] not required." *Id.* at 6. Of course, the parties did not read the authority the same way. *See id.* at 34. And that disagreement led to the present discovery dispute.

## II. DISCUSSION

Under Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2), a party must respond or object to interrogatories and requests to produce within 30 days of being served with the discovery requests (unless the document requests were delivered under Rule 26(d)(2)). FED. R. CIV. P 33(b)(2), 34(b)(2). Here, the Fund failed to provide any response for 53 days after service. Finally, four days after Defendants contacted them about the delay, the Fund sent an email. The Fund did not send any discovery responses then, but at least it promised to do so. And Defendants were accommodating; they agreed to give the Fund until the end of the week of January 17. But the Fund missed that deadline as well. About five days after the promised response date, the Fund refused to provide any answers to the outstanding discovery requests, having belatedly discovered a legal argument that it believed stymied the discovery in question.

In light of this delay, the Fund may have waived the objection to discovery that it raises in its motion to quash. Indeed, it "is well-established" that the failure to respond and object within a timely manner "waives a subsequent assertion of objections in the absence of good cause." *Buonauro v. City of Berwyn*, 2011 WL 116870, at *4 (N.D. Ill. Jan. 10, 2011) *on reconsideration in part,* 2011 WL 2110133 (N.D. Ill. May 25, 2011). The record now before the Court is extensive, and it includes the email exchange between counsel regarding the Fund's failure to respond. It may be that the Fund's belated discovery of an asserted reason why it thinks it is not required to respond to Defendants' discovery requests would constitute "good cause" for the Fund's tardiness. Or, it may not. But the Court will not rest its present decision

4

on waiver. The present motions raise an important legal question and it makes sense to resolve it now.

The Fund's motion to quash is premised on the idea that Defendants are not entitled to any of the requested discovery because, by failing to arbitrate the dispute over whether they are liable for BRM's withdrawal from the pension plan, they "waived their right to contest controlled group membership or withdrawal liability." [ECF No. 20, at 6.] This contention is based on an amendment to ERISA known as the MPPAA (which is short for The Multiemployer Pension Plan Amendments Act). The MPPAA "imposes liability on employers who withdraw from multiemployer plans governed by ERISA." *Midwest Operating Engineers v. Dredge*, 2015 WL 7731868, at *11 (N.D. Ill. Dec. 1, 2015); *see Central States, Southeast & Southwest Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 667 (7th Cir. 2005). Also, when a withdrawing employer cannot pay its full obligation, the MPPAA allows a pension plan to "recover the deficiency jointly and severally from any other trade or business under common control with the withdrawing employer." *Cent. States, Se. & Sw. Areas Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 747 (7th Cir. 2014) *cert. denied*, 135 S. Ct. 964 (2015); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 549 (7th Cir. 2013). Under the MPPAA, trades or businesses that are under common control (*i.e.* are part of the same control group) constitute "a single employer for purposes of determining withdrawal liability." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011). Thus, "the purpose of the controlled group inquiry is to determine whether an entity is an employer for purposes of ERISA." *Cent. States, Se. & Sw. Areas Pension Fund v. Progressive Driver Servs., Inc.*, 940 F. Supp. 1311, 1313 n.1 (N.D. Ill. 1996); s*ee also Local 705, Int'l Bhd. of Teamsters Pension Trust Fund v. Packey, Inc.*, 1997 WL 724548, at *5 (N.D. Ill. Nov. 10, 1997).

5

In this case, the Fund alleges that all five defendants were part of BRM's control group and, thus, constituted a single employer under the MPPAA. [ECF No. 1, ¶¶ 9-11.] The Fund devotes much of its brief to this issue. *See* ECF No. 20, at 2-5. But the merits are complicated. Perhaps the trade or business element may be clear-cut in this case. *See CLP Venture*, 760 F.3d at 749. But the question of common control is governed by the multipronged regulations promulgated under § 414(c) of the Internal Revenue Code. *SCOFBP, LLC*, 668 F.3d at 880; *see also McDougall v. Quickie Transp. Co.*, 6 F. App'x 456, 458-59 (7th Cir. 2001). Moreover, the Fund's theory of common control hinges on rules regarding spousal attribution and adult children attribution that both have significant exceptions (which Defendants claim apply in this case). *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Steinberg*, 32 F.3d 269, 271 (7th Cir. 1994); *Cent. States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 389 (7th Cir. 1993); *Hancock v. Koz Trucking & Sons, Inc.*, 2015 WL 996821, at *2-3 (N.D. Ill. Mar. 3, 2015); *Bd. of Trs. of the Upper Peninsula Plumbers & Pipefitters' Pension Fund v. Jim Baril Plumbing & Heating, Inc.*, 2014 U.S. Dist. LEXIS 22179, *8 (W.D. Mich. Feb. 20, 2014). Regardless, the present motions do not properly put at issue the merits of whether Defendants actually were a single employer under common control. Therefore, this question is best left for another day.

The parties' dueling motions to quash and compel turn on the much narrower issue of the preclusive effect of a failure to arbitrate. Under §1401(a) of the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [the MPPAA] shall be resolved through arbitration." *Hancock v. Koplos Excavating, Inc.*, 2013 WL 3819610, at *2 (N.D. Ill. July 23, 2013) (quoting 29 U.S.C. §1401(a)) (alterations in original). If an employer fails to timely request arbitration,

6

then it waives any defenses to the fund's determination of withdrawal liability. *Cent. States, Se. & Sw. Areas Pension Fund v. Port Huron Bldg. Supply Co.*, 2016 WL 611805, at *2 (N.D. Ill. Feb. 16, 2016).

Crucially, though, this arbitration "requirement presupposes a determination that the dispute is with an 'employer.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372 (7th Cir. 1992); s*ee also Cent. States, Se. & Sw. Pension Fund v. Pers., Inc.*, 974 F.2d 789, 792 n.1 (7th Cir. 1992) ("Although Perrelle failed to request arbitration, this dispute is properly before the court because Perrelle argues that he was not an 'employer' within the meaning of the statute."). Therefore, the "failure to initiate arbitration does not preclude judicial determination of whether a defendant is an employer within the meaning of 29 U.S.C. § 1301(b)(1)." *Cent. States, Se. & Sw. Areas Pension Fund v. Pioneer Ranch Ltd. P'ship*, 2006 WL 2054385, at *3 (N.D. Ill. July 20, 2006) *aff'd sub nom. McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571 (7th Cir. 2007); *see also Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 2006 WL 1037152, at *5 (N.D. Ill. Apr. 17, 2006) *aff'd in part, vacated in part, remanded sub nom. Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591 (7th Cir. 2008); *Wilhelm v. McAnn's W. 48th St. Rest. Corp.*, 2003 WL 41988, at *3 (N.D. Ill. Jan. 3, 2003); *Local 705, Int'l Bhd. of Teamsters Pension Trust Fund v. Packey, Inc.*, 1997 WL 724548, at *4 (N.D. Ill. Nov. 10, 1997) ("The Seventh Circuit, among others, has held in case after case, including the other major case cited by the plaintiff, that the question of whether an entity was *ever* an MPPAA employer is for the court to determine, while the question of whether an MPPAA employer *ceased* to be such an employer is for the arbitrator to determine."); *Cent. States, Se. & Sw. Areas Pension Fund v. Progressive Driver Servs., Inc.*, 940 F. Supp. 1311, 1314 (N.D. Ill. 1996) ("Courts that have resolved employer status questions

7

before arbitration have confronted entities which, unlike [the putative employer in *Banner*], never had been employers subject to the MPPAA, and which therefore *legitimately challenged application of the MPPAA dispute resolution process to them*.") (emphasis in original).

All Defendants deny in their joint answer that they were, within the meaning of the MPPAA, an employer, a single employer, and a member of the alleged BRM control group (which appears largely to be three ways of saying the same thing, given the facts of this case). [ECF No. 11, ¶¶ 9-11.] In their motion, though, Defendants seem to concede that BRM and B.A. Right fall within the MPPAA's definition of "employer" because Defendants only state that Route 66, SJR, and Four Beat "maintain that they are not employers" and deny they ever were members of the BRM control group. [ECF No. 22, at 4.] As the case law cited in the preceding paragraph makes indisputably clear, Defendants failure to arbitrate does not preclude them from litigating whether Route 66, SJR, and Four Beat ever were employers within the meaning of the MPPAA. *See New York State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 647-48 (2d Cir. 2005); *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Bellezza Co.*, 57 F. App'x 972, 974 (3d Cir. 2003) ("Disputes over whether an entity was *ever* a member of the control group – and thus an 'employer' under MPPAA – are for the court to determine."); *Pension Plan for Pension Trust Fund for Operating Engineers v. Galletti Concrete, Inc.*, 2013 WL 5289017, at *2 (N.D. Cal. Sept. 19, 2013); *Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 370 (E.D.N.Y. 2013).

The Fund also alleges that Defendants were alter egos to BRM. [ECF No. 1, ¶ 12.] All Defendants deny this allegation in their answer. [ECF No. 11, ¶ 12.] Again, though, Defendants' motion to compel only argues that Route 66, SJR, and Four Beat never were alter egos to BRM. [ECF No. 22, at 4.] "[A]lter-ego liability does not arise from any particular

8

statutory provision at all, but rather from a general federal policy of piercing the corporate veil when necessary to protect employee benefits." *New York State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 647 (2d Cir. 2005). Thus, the issue of alter ego status is different from the issue of common control. But, the former still concerns "employer status per se." *Id.* And a party who contends it never was an alter ego can litigate that issue even if it never initiated arbitration. *Id.*; *Doherty v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 16 F.3d 1386, 1390 (3d Cir. 1994), *as amended on reh'g* (Mar. 17, 1994).

The Fund's never acknowledges the jurisprudence discussed above in its motion to quash. Instead, the Fund's argument is premised mostly on a misreading of dicta from a Seventh Circuit case, *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992), commonly referred to as *Slotky*. In *Slotky*, the court explicitly noted that, as already quoted above, the arbitration requirement "presupposes a determination that the dispute is with an 'employer.'" *Id.* at 1372. The court explicitly stated that "the issue of membership in a controlled group cannot be within *exclusive* arbitral jurisdiction" and that "courts can resolve some disputes over membership in controlled groups[.]" *Id.* at 1373. It also acknowledged that if a person chooses arbitration, then "the arbitrator can decide the issue of controlled group membership." *Id.* Essentially, the court recognized that the arbitrator and the court could have concurrent jurisdiction over the matter. The Seventh Circuit also cautioned that people who "might be adjudged a member of a control group . . . would be well advised to commence arbitration." *Id.* The reason for this observation was not that the failure to arbitrate would forever preclude someone from litigating whether he was an employer. Instead, the court offered this helpful advice because it realized that "if a court holds that he is a member of such a group" then he would "have waived the issues that are reserved for arbitration." *Id.*

9

The Fund seizes on the remark in *Slotky* that "it can be argued" that someone who was notified of potential liability, or who knew or should have known about it could be required to arbitrate "on the penalty of losing all opportunity to contest his members." *Id.* But the recognition in dicta that somebody could raise a certain argument does not mean that the court is adopting that argument. Indeed, the court was careful to make that clear, stating, "But this we need not decide." *Id.* Moreover, such musings carry little weight when compared to the extensive jurisprudence holding that a person's failure to arbitrate does not preclude him from litigating whether he ever was an employer under the MPPAA or an alter ego to an MPPAA-employer.

A contrary conclusion cannot be correct. Imagine that there is a multiemployer pension fund that manages a pension plan for a few construction companies in New York, all of which are part of a control group. The fund decides to send a letter to a farmer in North Dakota, saying that he also is a member of the New York control group and is liable for the withdrawal payment due from one of the construction companies. Under Plaintiffs' understanding of the law, that farmer would have to initiate arbitration to challenge the fund's determination, incurring significant cost and hassle. And he would have to do so quickly. If he did not, the farmer would be bound to pay the withdrawal liability by a statute that never even applied to him (because he never actually was an "employer"). This would be an absurd and unjust result. It would encourage funds to try to game the system, particularly by preying on those who lack the resources or sophistication to understand a complex legal issue. Such a result is not required by the MPPAA or Seventh Circuit case law.

The only case cited by the Fund in support of its understanding of *Slotky* is *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP*

10

*Co.*, 2005 WL 2737072 (N.D. Ill. Oct. 18, 2005). But that case dealt with an entirely different question. The court explicitly stated in *El Paso*, "The issue is not whether Defendants were ever an employer because Defendants admit being controlled group members with a contributing employer prior to the merger and the withdrawal." *Id.* at *6. Thus, the holding in *El Paso* is entirely consistent with the wealth of case law recognizing that "the question of whether an entity was *ever* an MPPAA employer is for the court to determine, while the question of whether an MPPAA employer *ceased* to be such an employer is for the arbitrator to determine." *Packey*, 1997 WL 724548, at *4.

For these reasons, Route 66, SJR, and Four Beat are not precluded from contesting whether they ever were employers within the meaning of the MPPAA or whether they ever were BRM's alter ego. That means they are entitled to discovery on these issues. Defendants concede, however, that if the Court finds they were employers within the meaning of the MPPAA, then they "will have waived the issues that are reserved for arbitration." [ECF No. 22-2, at 41.] Therefore, even Route 66, SJR, and Four Beat concede they are not entitled to discovery on those matters at this time.

The parties' briefs do not focus on any specific interrogatory or document request. Rather, they deal with the present dispute in broad terms. Thus, the Court will not now rule what specific interrogatories and document requests must be answered by Plaintiffs. If, after considering this ruling, the parties disagree as to what discovery Plaintiffs must answer, they should bring that to the Court's attention through appropriate motion practice. Plaintiffs must respond to Defendants' outstanding discovery requests to which responses are required consistent with this ruling within 14 days of the date of this ruling, unless the parties agree to a different response date.

By April 29, 2016, the parties shall file a joint discovery plan identifying what discovery remains to be taken and the date by which the parties propose that discovery, both written and oral, should close. This case is set for a status hearing on May 5, 2016, at 10:15 a.m.

## IV. CONCLUSION

For the reasons stated above, the Fund's motion to quash [ECF No. 20] is granted in part and denied in part, and Defendants' motion to compel [ECF No. 22] is granted in part and denied in part.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 28, 2016